IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACY CARLSON,<br><br>    Plaintiff,<br><br>v.<br><br>COLORADO FIREARMS, AMMUNITION AND ACCESSORIES, LLC, A COLORADO LIMITED LIABILITY COMPANY, d/b/a CENTENNIAL GUN CLUB,<br><br>    Defendant. | CIVIL ACTION<br>NO. 22-1686 |

**MEMORANDUM OPINION**

**Schmehl, J.**   /s/ JLS                                   October   19 , 2022

Before the Court is the Motion to Dismiss Pursuant to Fed.R.Civ. P. 12(b)(2) filed by Defendant, Colorado Firearms, Ammunition and Accessories, LLC, a Colorado Limited Liability Company d/b/a Centennial Gun Club ("Centennial"). Plaintiff, Tracy Carlson ("Carlson"), has opposed the motion, and Centennial has filed a reply. Having read the parties' briefing, I will grant Centennial's Motion to Dismiss due to lack of personal jurisdiction. Accordingly, this action is dismissed.

**I.**   **BACKGROUND**

On March 9, 2022, Carlson filed a Complaint in the Lancaster County Court of Common Pleas against Centennial, alleging violations of the ADEA, Title VII and the PHRA. On May 2, 2022, Centennial removed this matter to this Court, and on May 6, 2022, filed the instant motion seeking to have the case dismissed, alleging that this Court lacks subject matter jurisdiction.

Carlson is a Pennsylvania resident who was employed by Centennial. Dkt No. 2, Ex. A, ¶ 2. Centennial is a Colorado limited liability company, incorporated in Colorado, with a principal place of business in Colorado. *See* Affidavit of M. Grosjean, Dkt. No. 2, Ex. B, ¶ *2-4*. None of the members of Centennial's LLC reside in Pennsylvania. *Id*. at ¶ 5. On June 21, 2021, Colorado Firearms, Ammunition and Accessories, LLC took ownership of and began running the operations of Centennial. *Id*. at ¶ 8. At the time that Colorado Firearms, Ammunition and Accessories, LLC purchased Centennial, Centennial had roughly 50 employees. *Id*. at ¶ 9. Carlson was the only employee who resided in Pennsylvania. *Id*. at ¶ 15. From the time Colorado Firearms, Ammunition and Accessories, LLC began operating Centennial Gun Club on June 21, 2021, throughout Carlson's termination on August 6, 2021, Colorado Firearms, Ammunition and Accessories, LLC submitted Carlson with her scheduled salary payments in Pennsylvania. *Id*. at ¶ 16.

Centennial claims that it does not conduct business in Pennsylvania, does not have members who reside in Pennsylvania, and with Carlson no longer working there, does not employ anyone residing in Pennsylvania. *Id.* at ¶ 19. It also claims that all employee related decisions, including decisions to hire, discipline, promote, and/or terminate employees are made in Colorado. *Id.* at ¶ 17.

In response, Carlson states that when she was hired as a full-time employee of Centennial in 2018, it was aware that she was a Pennsylvania resident. *See* Affidavit of T. Carlson, Dkt No. 3, Ex. D, ¶ 5. She also states that ninety-five percent of her work for Centenntial was done from her home in Pennsylvania, and the majority of the marketing work product that she produced for Centennial was completed in her home in

Pennsylvania. Dkt No. 3, Ex. D, ¶¶ 6-7. Carlson states that Centennial reimbursed her for a computer that she purchased for work, that she received biweekly paychecks from Centennial with Pennsylvania state and local taxes deducted, and while working in Pennsylvania, she sent and received approximately 100 emails a day to supervisors and team members. Id., ¶¶ 9-11.

## II.     DISCUSSION

Centennial filed the instant Motion to Dismiss, alleging that it does not have sufficient minimum contacts with Pennsylvania to allow it to be sued in this Court. For the reasons set forth below, I agree that Centennial lacks sufficient minimum contacts with Pennsylvania that it could anticipate being sued in this venue. Accordingly, I will grant Centennial's Motion and dismiss this matter.

### A. Jurisdiction

Rule 4(e) of the Federal Rules of Civil Procedure grants district courts personal jurisdiction over non-resident defendants to the extent permitted by the law of the state in which the district court sits.  *See* Fed. R. Civ. P. 4(e). In Pennsylvania, the applicable long-arm statute authorizes personal jurisdiction over non-resident defendants to be exercised to the "fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). A district court has personal jurisdiction over a non-resident so long as the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Although a defendant has the initial burden of raising the defense of lack of personal jurisdiction, once such a defense is raised, the burden shifts to the plaintiff to demonstrate facts that suffice to

support an exercise of personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (*citing Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)); *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 602 (E.D. Pa. 2010). As the Third Circuit has explained, "'once a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (*quoting Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). When defending against a Rule 12(b)(2) motion to dismiss, a plaintiff must do more than rely on the pleadings alone. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 102, n.6 (3d Cir. 2004) (*quoting Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990)). Instead, once a motion has been made, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* (*quoting Patterson*, 893 F.2d at 603- 04).

There are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction requires the defendant to have maintained "continuous and systematic" contacts with the forum state. *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir. 1982). In order for a district court to have specific jurisdiction over a defendant, the defendant's contacts with the forum state must be such that defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). For a district court to properly exercise specific jurisdiction, the plaintiff must satisfy a two-part test. First, the plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the

forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Second, the court must determine whether the exercise of jurisdiction "would comport with 'traditional notions of fair play and substantial justice.' " *See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 150–51 (3d Cir. 1996) (*citing International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). To satisfy the first prong of the test and show sufficient minimum contacts with the forum state, Carlson must show that Centennial has "purposefully directed [its] activities" at Pennsylvania. *See Burger King*, 471 U.S. at 472.

1. **General Jurisdiction**

As discussed above, general jurisdiction is based on a defendant's "continuous and systematic contacts" with the forum state and allows personal jurisdiction over a defendant for any claim, whether the claim is related to the defendant's contacts with the forum state or not. *Neff v. PKS Holdings, LLC*, 2019 WL 3729568 (E.D.Pa. 2019) (Leeson, J.); *see also Metcalfe*, 566 F.3d at 334 (*quoting Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 416 (1984)). To determine whether a defendant is subject to general jurisdiction, a court asks whether the defendant is "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For corporations, "at home" includes the place of incorporation or a primary place of business, among other possibilities. *Id.* at 137 (*citing Goodyear*, 564 U.S. at 924.)

Centennial is not "at home" in Pennsylvania. It conducts no business in Pennsylvania. See Dkt No. 3, Ex. B ¶ 2-4. It is incorporated in Colorado, has its principal place of business in Colorado, and none of its members reside in Pennsylvania. See Dkt

No. 2, Ex. B ¶ 17. This Court clearly lacks general personal jurisdiction in this matter over Centennial.

   2. **Specific Jurisdiction**

As discussed above, specific jurisdiction exists only when the plaintiff can show that the defendant has constitutionally sufficient "minimum contacts" with the forum, *see Burger King Corp.*, 471 U.S. at 474, and the exercise of jurisdiction "would comport with 'traditional notions of fair play and substantial justice.'" *See Vetrotex Certainteed Corp.*, 75 F.3d at 150–51. To determine whether a defendant may be subjected to personal jurisdiction, the Third Circuit has issued a three-part test. *O'Connor*, 496 F.3d at 317. First, the defendant must have purposefully directed their activities toward the forum state. *Id.* Second, the claims must have arisen from the defendant's activities in the forum state. *Id.* Finally, if the previous conditions are met, exercise of jurisdiction must "comport with 'fair play and substantial justice.'" *Id.*

A review of the affidavits submitted in this matter shows that Centennial has no activities in Pennsylvania other than the fact that Carlson worked for it remotely from Pennsylvania, emails were exchanged with Carlson in Pennsylvania, Carlson was paid in Pennsylvania, and Centennial deducted the appropriate state and local taxes from Carlson's paychecks. Numerous other courts have held that paying a remote worker's salary is generally insufficient to establish personal jurisdiction. *Schrotberger v. Doe*, 2022 WL 4072962 (E.D. Pa., Sept. 1, 2022)(Younge, J.); *Grainer v. Smallboard, Inc.*, 2017 WL 736718 (E.D. Pa. February 24, 2017)(Jones, J.)(holding that an out-of-state defendant's solicitation of a Pennsylvania resident to enter into an employment contract was not sufficient to trigger specific jurisdiction over plaintiff's employment claims, even

though plaintiff worked remotely from Pennsylvania and defendant withheld income taxes for Pennsylvania and the borough of Phoenixville.); *Kearney v. Good Start Genetics, Inc.,* 2017 WL 6206168 (E.D. Pa. December 8, 2017)(Quinones, J.)(Plaintiff, a salesman, working remotely from Glen Mills, Pennsylvania, for a Massachusetts based medical diagnostic company, failed to establish that specific jurisdiction was appropriate despite the fact that defendant paid his salary, withheld Pennsylvania wage taxes, and the fact that plaintiff helped solicit business from at least twenty-four physician's offices located in Pennsylvania along with a large healthcare provider located in Blue Bell, Pennsylvania.); *Connell v. CIMC Intermodal Equipment,* 2016 WL 7034407 (M.D. Pa. Dec. 2, 2016)(Conner, J.) (holding no specific jurisdiction over employment discrimination matter despite the fact that out-of-state defendant – employer – was aware that plaintiff would be working from home in Pennsylvania.)

     Carlson cannot establish that Centennial has sufficient contacts with Pennsylvania to exercise personal jurisdiction over her. Carlson's affidavit states that while working for Centennial, ninety-five (95) percent of her work was done from her home in Pennsylvania and that the majority of her marketing work product was produced for Centennial while Carlson worked from her home in Pennsylvania. While working in Pennsylvania for Centennial, Carlson states that she sent and received approximately 100 work emails a day. Even assuming some of the emails that Carlson received were from Centennial, which is not stated specifically in her affidavit, these limited interactions are still insufficient to provide this Court with specific jurisdiction over Centennial. The mere fact that Centennial has a remote employee in Pennsylvania does not mean that it has purposefully availed itself of that employee's home state. Accordingly, considering

Centennial's lack of contacts with the forum state, Carlson has failed to satisfy her burden of setting forth a *prima facie* case that Centennial intentionally directed its activities at Pennsylvania.

Carlson argues that, in the alternative, personal jurisdiction exists in this matter based on the *Calder* effects test set forth in *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3rd Cir. 1998). In *O'Connor v. Sandy Lane Hotel Co.*, the Third Circuit announced the "traditional test" for specific jurisdiction and referred to *Calder's* "effects test" as "a slightly refined version" of the traditional test applied to intentional torts. 496 F.3d at 317 n. 2. Under the *Calder* effects test, if the Court is asked to consider specific personal jurisdiction over intentional torts, it must "first apply the traditional test [to find minimum contacts] and, if we do not find jurisdiction under the traditional test, we then consider the *Calder* effects test." *Devon MD, LLC v. Demaio*, 2019 WL 7042426, (E.D. Pa., Dec. 19, 2019) (Kearney, J.). Under the *Calder* effects test, this Court may exercise jurisdiction if Carlson shows: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (*citing IMO Indus., Inc.*, 155 F.3d at 265-66).

Assuming, *arguendo*, that the first two prongs of the *Calder* effects test are met, Carlson cannot prove that Centennial expressly aimed its tortious conduct at Pennsylvania, and therefore, this Court lacks personal jurisdiction over Centennial. As stated by the Third Circuit, "the mere allegation that the plaintiff feels the effect of the

defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*." *IMO Indus., Inc.*, 155 F.3d at 263. In addressing the *Calder* effects test, the Supreme Court instructed: "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). *Calder* requires deliberate targeting of the forum, and it cannot be inferred that a defendant "expressly aimed its tortious conduct at the forum from the fact that the defendant knew that the plaintiff resided in the forum." *Walburn v. Rovema Packaging Machs., L.P.*, 2008 WL 852443 (D.N.J. 2008).

In the instant matter, it cannot be said, and Carlson cannot prove, that Centennial "expressly aimed" its alleged tortious conduct at Pennsylvania merely because Carlson resided here. If this Court were to adopt Carlson's position as to the applicability of the *Calder* test, any accusation of an intentional tort, even against a defendant with nonexistent contacts with the forum state, would be enough to result in personal jurisdiction over the foreign defendant. This is an extreme result that must be rejected.

Therefore, as Centennial did not have minimum contacts with Pennsylvania, and did not direct any intentional tort to Pennsylvania, I find that this court lacks personal specific jurisdiction over Centennial and this action is dismissed.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Centennial's Motion to Dismiss is granted, and this matter is dismissed.